UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 05-0222 (PLF)** |
| | : | |
| v. | : | |
| | : | |
| **DONNELL FITZPATRICK,** | : | |
| | : | |
| | : | |
| Defendant. | | |

## GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant's Motion to Suppress Evidence and Statements. In support of this opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing regarding the motion.

### I. FACTUAL BACKGROUND

On April 9, 2005, at approximately 10:00 p.m., four members of the Metropolitan Police Department's Gun Recovery Unit were on patrol in a marked car near 2222 Prout Street, SE, in the District of Columbia.[1] They noticed the defendant walking in the street directly in front of the police car. He did not appear to notice the officers as he reached under his shirt and adjusted the butt of a pistol that was tucked into the front waistband of his sweatpants.

The defendant continued to walk across the street toward an alley as two officers jumped out of the car. They did not say anything to the defendant as they approached him from behind and forced him to lie down in the mouth of the alley. An officer then handcuffed the defendant and rolled him over. Another officer then reached into the front waistband of the defendant's pants, and

---

[1] The area patrolled by the officers is located in Washington DC's Sixth District, Patrol Service Area 607.

recovered an unloaded Taurus .38 caliber revolver. He defendant was placed under arrest. Before rights were administered, the defendant stated, spontaneously, that he got the gun the day before because guys were always picking on him.

The defendant has been charged with unlawful possession of a firearm by a person convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1). He now moves to suppress all evidence and statements in connection with the case. The defendant's motion should be denied in full.

## II. DISCUSSION

The defendant makes three primary arguments in his motion. First, he argues that the officers who stopped and arrested him lacked probable cause, and that the stop was not based on any legitimate exception to the warrant requirement. Second, he argues that any statements he made were made involuntarily. Finally, he argues that his statements were the product of custodial interrogation, in violation of Miranda v. Arizona, 384 U.S. 436 (1966). All three arguments fail, and require the denial of the defendant's motion.

**A.    THE STOP, SEARCH, AND ARREST OF THE DEFENDANT WERE LAWFUL.**

The defendant first argues that he was stopped and searched in the absence of probable cause or any exception to the warrant requirement. This argument fails on two bases. First, the officers had probable cause to believe that a crime had been committed in their presence, and were entitled to place the defendant under arrest at that time. Second, even assuming that the officers' observations of the situation of the situation were incorrect, they possessed the requisite reasonable suspicion to conduct a stop under Terry v. Ohio, 392 U.S. 1 (1968).

   *1.    The officers possessed probable cause to believe that a crime had been committed in their presence.*

As the Supreme Court has written, "[t]he standard for arrest is probable cause, defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Gerstein v. Pugh, 420 U.S. 103, 111-12 (1975) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). See also Illinois v. Gates, 462 U.S. 213, 246 (1983) ("probable cause does not demand the certainty we associate with formal trials[;] [i]t is enough that there was a fair probability"). It is beyond cavil that police officers are permitted to make warrantless arrests upon probable cause for misdemeanors committed in their presence, and for any felonies. See generally United States v. Watson, 423 U.S. 411 (1976); Atwater v. City of Lago Vista, 532 U.S. 318 (2001).

Here, evidence at a hearing will demonstrate that the officers are certain that they saw the defendant in possession of a firearm. Based on this, they possessed probable cause to believe that a crime had been committed in their presence, see D.C. CODE § 22-4504(a)(1) (2001) (formerly D.C. CODE § 22-3204(a)(2) (1981)) ("No person shall carry within the District of Columbia either openly or concealed on or about their person, a pistol, without a license issued pursuant to District of Columbia law, or any deadly or dangerous weapon capable of being so concealed."), and were entitled at that moment to place the defendant under arrest.[2]

   *2.    Alternatively, the stop and search of the defendant were permissible under Terry.*

Even if the officers did not possess probable cause for the stop of the defendant, they were permitted to conduct a brief investigatory encounter under Terry. Terry permits police officers to

---

[2] Under District of Columbia law, it is not possible to lawfully possess a pistol not registered as of September 24, 1976. See Seegars v. Gonzales, 396 F.3d 1248, 1249 (D.C. Cir. 2005). After assessing the information immediately available to them, the commonly known fact of the District's firearms laws provided the officers with, at a minimum, probable cause to make the arrest.

3

temporarily "seize" or detain a person under certain circumstances, namely in brief encounters between a citizen and the police on public streets, that require swift action because of observations the officer has made. Terry, 392 U.S. at 20. The officer may briefly "seize," or detain the citizen if he has a reasonable, articulable suspicion that "criminal activity may be afoot." Id. at 30. The officer need not be *certain* that the citizen is engaged in criminal activity; reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). Thus, a Terry stop may be conducted simply "on the need to 'check out' a reasonable suspicion." United States v. Clark, 24 F.3d 299, 303 (D.C. Cir. 1994). Furthermore, a stop under Terry has occurred when either an officer physically lays a hand on an individual, or where the officer asserts his authority and the individual submits to that show of authority. See California v. Hodari D., 499 U.S. 621, 627 (1991).

Because such a stop may occur on a reasonable suspicion, whether such suspicion existed in a particular situation is determined by the totality of the circumstances. Courts may not scrutinize each possible factor upon which the officer relied on in a separate and distinct manner. See United States v. Sokolow, 490 U.S. 1, 8-9 (1989). "An officer on the beat does not encounter discrete, hermetically sealed facts," and for that reason while "a single factor might not itself be sufficiently probative of wrongdoing to give rise to a reasonable suspicion, the combination of several factors – especially when viewed through the eyes of an experienced officer – may." United States v. Edmonds, 240 F.3d 55, 59-60 (D.C. Cir. 2001).

Here, the totality of the circumstances will clearly establish that the officers possessed the requisite reasonable suspicion needed to conduct a Terry stop. First, the stop took place in the nighttime in a high-crime area. While an individual's presence in an area, standing alone, is not sufficient to raise suspicion that the person is committing a crime, see Wardlow, 528 U.S. at 124,

4

the fact that a stop occurs in a known crime area is a relevant contextual consideration in the Terry analysis. See Edmonds, 240 F.3d at 60 ("[T]he probative value of a neighborhood's reputation as a high-crime area is firmly established.").[3] Indeed, the very officers on duty belonged to the MPD's Gun Recovery Unit, a unit typically dispatched to high-crime areas or to areas in which gunshots have been reported. Here, the officers – specifically trained to identify guns, and variations in clothing when an individual is carrying a firearm – believed that they saw an individual carrying a weapon. This allowed them to approach, stop, and briefly detain the defendant. Moreover, the stopping officer "may conduct a protective search of the outer layers of the suspect's clothing if [the officer] has a 'reasonable fear' that the suspect is armed and dangerous." Brown, 334 F.3d at 1164 (quoting Terry, 392 U.S. at 30). Here, their belief that the defendant was carrying a gun was reasonable, entitling them, at a minimum, to frisk him. As such, the recovery of the gun was lawful.

B.  **NONE OF THE DEFENDANT'S STATEMENTS ARE ENTITLED TO THE PROTECTIONS OF THE FIFTH AMENDMENT.**

   1. *The defendant's statements were voluntary.*

The defendant first argues that his statements were involuntary. The government bears the burden of establishing voluntariness by a preponderance of the evidence. See Lego v. Twomey, 404 U.S. 477, 489 (1972). To determine whether a statement was voluntarily made, this Court must examine the totality of the circumstances to determine whether the defendant's "will has been overborne and his capacity for self-determination critically impaired." See Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973); Colorado v. Connelly, 479 U.S. 157, 167 (1986). "Without

---

[3] In addition, the fact hat the stop took place at 10:00 p.m. is relevant to the Terry inquiry. See United States v. Brown, 334 F.3d 1161, 1165 (D.C. Cir. 2003), cert. denied, 541 U.S. 954 (2004) (listing cases and finding the time of night to be a relevant consideration in determining whether reasonable articulable suspicion exists).

a showing of coercive police activity . . . there is not a basis for concluding that [a defendant's] confession was involuntary . . . ." Martin v. United States, 567 A.2d 896, 908 (D.C. 1989).

The government expects that, at the upcoming hearing on the motion, the totality of circumstances will demonstrate that defendant's statements were voluntarily made, and that his will was not overborne. The defendant identifies no coercive police activity or any other circumstance that calls his voluntariness into question. Moreover, the evidence will show that while the officers came in contact with the defendant when they initially apprehended him, they used only the force necessary to restrain him, and did not come close to the type of force that could have overcome the defendant's will. Moreover, any physical contact with the defendant was temporary, and was so temporally removed from the making of his statements that it could not possibly have affected their voluntariness.

In cases with much starker circumstances than those in this case, the courts have found statements to be voluntary. See, e.g., Bliss v. United States, 445 A.2d 625, 631-32 (D.C. 1982) (defendant was in pain from gunshot wound, had little food or sleep, but it was a flesh wound, there was little blood, and he was able to answer questions), cert. denied, 459 U.S. 1117 (1983); Harris v. Dugger, 874 F.2d 756, 759-62 (11th Cir. 1989) (confession voluntary even though defendant had forearm in cast and was handcuffed during six-hour interrogation), cert. denied, 493 U.S. 1011 (1989); United States v. Leon Guerrero, 847 F.2d 1363 (9th Cir. 1988) (promises that cooperation would be communicated to prosecutors insufficient to overcome will); United States v. Yunis, 859 F.2d 953, 961 (1988) (defendant's seasickness, his uncomfortably hot room, and his unfamiliarity with American legal culture not a legally adequate basis for concluding that confession was involuntary); United States v. Pelton, 835 F.2d 1067 (4th Cir. 1987) (FBI agent's assertion that agent would launch full-scale investigation if defendant did not cooperate not sufficient to render

6

statements involuntary), cert. denied, 486 U.S. 1010 (1988). Certainly, the facts of this case do not come close to those in any of the cases cited above. In short, the defendant cannot identity any circumstances that would indicate that his statements were not freely and voluntarily given.

    *2.     The defendant's statements were taken in accord with Miranda.*

The defendant finally argues that the defendant's statements must be suppressed because the defendant was in custody at the time he made his statements. The strictures of Miranda apply to statements that are the product of custodial interrogation. See Calaway v. United States, 408 A.2d 1220, 1224 (D.C. 1979). For purposes of Miranda, a suspect is in custody only if "the individual's freedom of movement is curtailed to the 'degree associated with formal arrest.'" Patton v. United States, 633 A.2d 800, 815-16 (D.C. 1993) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam) (internal quotation marks omitted)). A suspect in such a situation must be informed of his right to refuse to answer any statements; the failure to do so will lead to the suppression of any statements that suspect makes. See Dickerson v. United States, 530 U.S. 428 (2000).

However, if a suspect is in custody, but volunteers a statement in the absence of interrogation, there is no Miranda violation, even if the suspect was not given any advice of rights. Miranda, 384 U.S. at 478 ("[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding"); Rhode Island v. Innis, 446 U.S. 291, 300 (1980). In this case, at an evidentiary hearing, it will be shown that the defendant's statements were volunteered to officers in the absence of interrogation. Here, after being placed under arrest, but without being questioned by the police, the defendant volunteered that he had recently purchased the gun for

protection because individuals had been picking on him.[4] Because the defendant's statements were volunteered, and were not the product of interrogation, the statements should not be suppressed.

### III. CONCLUSION

In light of the foregoing, the defendant's Motion to Suppress Evidence and Statements should be denied in full.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

_____

ELLIOT WILLIAMS
Special Assistant United States Attorney
Organized Crime and Narcotics Trafficking Section
555 4th Street, N.W., Room 4108
Washington, DC 20530
(202) 514-5241

---

[4] The Government has paraphrased the defendant's statement to the extent that it is able at this time.